UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

LEONARD LEE HALEY, *Prisoner Identification No. 325235*,

    Plaintiff,

v.

FRANK BISHOP, *Warden*
KRISTA SELF, *R.N.P.*, and
GLEN HOOVER,

    Defendants.

Civil Action No. TDC-17-1846

## MEMORANDUM OPINION

Plaintiff Leonard Lee Haley, an inmate confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Warden Frank Bishop, Nurse Krista Self, and Correctional Officer Glen Hoover violated his First Amendment right against retaliation for filing a grievance and his Eighth Amendment right against cruel and unusual punishment. Pending before the Court are Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Having reviewed the Amended Complaint and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be GRANTED.

### BACKGROUND

On November 16, 2016, Haley filed a civil rights complaint in this Court against Hoover for the alleged wrongful use of chemical spray against Haley. Hoover was never served in that

case. In May 2017, Haley voluntarily withdrew the Complaint before service of process issued "due to working out our issues." *Haley v. Hoover*, No. TDC-16-3723 (ECF No. 7).

Haley suffers from Bell's Palsy, esophageal stricture, achalasia, heel pain, arthritis, nerve damage, and nerve pain. In December 2016, Haley was receiving, among other medications, Tramadol, a pain medication to treat his chronic heel pain.

On December 11, 2016, Hoover was assigned to work in Housing Unit 1, in which Haley was located. According to Hoover, he found a small packet outside of Haley's cell. Haley asked if Hoover could pass the packet to another inmate on the same tier in exchange for coffee. Hoover declined and advised Haley that he did not pass items from cell to cell. Hoover then opened the packet and found five 50 mg tablets of Tramadol inside a paper cup. Pursuant to Maryland Department of Public Safety and Correctional Services ("DPSCS") policy, Hoover turned the medication over to Nurse Krista Self, then known as Krista Bilak ("Self"). Hoover also filed a report relating to this incident. Haley denies that he attempted to pass medication to another inmate.

After the medical department received the Tramadol, Self entered an order discontinuing Haley's Tramadol prescription and placed an alert in Haley's medical record. According to Self, termination of the Tramadol prescription was medically appropriate because Haley was hoarding and trading the Tramadol rather than ingesting it, which reveals that Haley did not have a medical need for it. Following this incident, Haley continued to be seen by medical staff and to receive other pain medication, including Neurontin, Cymbalta, Naprosyn, Baclofen, and Tegretol.

On July 5, 2017, Haley filed a complaint against Self and Warden Bishop. On May 16, 2018, after these Defendants had filed Motions to Dismiss, Haley was granted leave to file an Amended Complaint limited to facts and causes of action relating to the factual allegations raised

in the initial Complaint, to include claims against Hoover, whom he had previously failed to name as a Defendant. Haley filed the Amended Complaint, including Hoover as an additional Defendant, in which he alleges that Hoover's report that Haley had passed Tramadol was fabricated and was in retaliation for Haley's filing of his civil rights complaint against Hoover, a claim that is construed as an alleged violation of Haley's First Amendment rights. He also alleges that in discontinuing of his Tramadol prescription, Self violated Haley's Eighth Amendment rights.

Haley included additional claims alleging that he was improperly prescribed Cymbalta and that his usage of Ensure was improperly discontinued. Because the Court's grant of leave to amend did not permit these new claims unrelated to the original allegations, they will not be considered and will be dismissed.

Defendants have each filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Although Haley was advised of his right to file a memorandum in opposition to the Motions, he has failed to do so.

## DISCUSSION

Defendants seek either dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or summary judgment pursuant to Rule 56, on the grounds that Haley has failed to exhaust his administrative remedies and has otherwise failed to state a constitutional claim regarding retaliation and denial of medical care.

### I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements

3

do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). When a moving party submits affidavits or other evidence for the Court's consideration on a motion to dismiss, the Court ordinarily may not consider such materials unless the motion is treated as one for summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) or otherwise explain why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d), *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Although Haley filed a Rule 56(d) affidavit on April 4, 2018, requesting discovery that he believed was necessary to respond to the then-pending Motions to Dismiss, or in the Alternative, for

Summary Judgment, those motions were denied without prejudice as moot in light of Haley's Amended Complaint. The Court granted Haley's Motion for Discovery and ordered Defendants to "provide Haley with access to review his full medical file, including but not limited to sick-call slips, prescription directives, and records relating to in-house and outside consultations." Order 5, ECF No. 25. No further discovery requests were filed. Under these circumstances, the Court may construe the present Motions as Motions for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Exhaustion of Administrative Remedies

Warden Bishop and Hoover raise the affirmative defense that Haley has failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

In Maryland prisons, for the claims against Warden Bishop and Hoover, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 to -210 (2002); Md. Code Regs. ("COMAR") 12.02.28.02(B)(1) (2018) (defining the ARP). First, a prisoner must file a grievance, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10–206, 10–210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B.

Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10–210.

On January 31, 2017, Haley filed ARP No. NBCI-0250-17 in which he alleged that Hoover retaliated against him by claiming that he sought to pass his medication to another inmate, asserted that Self had violated his Eighth Amendment rights by discontinuing his Tramadol prescription, and requested the renewal of his prescription. An investigation revealed that Hoover had filed a matter of record on December 11, 2016 regarding Haley's efforts to pass his medication and that the medical department then discontinued Haley's prescription. Based on this information, the Acting Warden dismissed the ARP as meritless. Haley was also advised that the ARP was untimely. According to the Executive Director of the IGO, Haley did not appeal this determination to the IGO or file any other grievance alleging retaliation by Hoover. Thus, while Haley began the administrative remedy process, he failed to complete it. He offers no explanation for his failure to pursue administrative remedies through all levels of the grievance process. Accordingly, his claims against Warden Bishop and Hoover must be dismissed.

### III. Eighth Amendment

Haley also asserts an Eighth Amendment claim based on Self's decision to terminate his Tramadol prescription. In order for a prisoner to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

7

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability by "respond[ing] reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Although Haley suffers from objectively serious medical conditions, he cannot succeed on his claim that the discontinuation of his Tramadol prescription constituted deliberate indifference to a serious medical need. First, Haley's claim that Self discontinued the Tramadol prescription in retaliation for Haley's federal complaint against Hoover is not supported by the evidence. Because Haley's federal complaint against Hoover, filed in November 2016, was never served on

Hoover, there is no evidence that he was even aware of that complaint. Second, Haley's claim that Hoover's matter of record on the alleged passing of Tramadol was fabricated because it was signed by a fictitious individual is refuted by the declaration of Brenda Marvin, NBCI's Litigation Coordinator, that Lt. Patrick Speir, the signatory on Hoover's matter of record, is a supervisory officer at NBCI. Under these circumstances, Haley has not presented sufficient evidence to permit a reasonable juror to conclude that Self discontinued the Tramadol not because of the report that he had hoarded his medication, but because of a retaliatory motive. Where Self could rely on Hoover's report and the submission of the five tablets of Tramadol found outside of Haley's cell to determine that Haley was no longer taking his medication as prescribed and instead was hoarding and distributing it, her determination that Haley no longer required Tramadol was reasonable under the circumstances and did not constitute deliberate indifference to his medical needs. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001).

Even if there remained a genuine issue of material fact relating to Self's motivation in discontinuing the Tramadol, Haley's medical records demonstrate that after his Tramadol was discontinued, Haley was seen regularly by medical staff and was prescribed and regularly received other types of pain medication. Within a week after she discontinued the Tramadol prescription on December 11, 2017, Self submitted a renewal request for Haley's prescription for Neurontin, another pain reliever. During that same week, Haley also began receiving Naprosyn, a different pain medication. At his annual physical examination on January 18, 2017, Haley reported no specific pain. Although a different nurse apparently declined Haley's request for his former pain medication on March 2, 2017, Self renewed Haley's Neurontin and Naprosyn prescriptions on March 14, 2017. On March 30, 2017, Self refused to reinstate the Tramadol prescription, but in response to continuing complaints of pain, Self discontinued Neurontin and prescribed a new pain

9

medication, Cymbalta, on April 26, 2017. Then on June 16, 2017, when Haley reported that Cymbalta and Naprosyn were not controlling his pain, Self prescribed Baclofen to address his pain. Thus, at most, Haley has established a disagreement with his medical provider over the specific pain treatment to be provided. *See Scinto*, 841 F.3d at 225 (stating that a disagreement between an inmate and a medical provider over the appropriate medical care does not establish an Eighth Amendment violation absent exceptional circumstances). Because Self and other medical staff consistently examined Haley, prescribed medication to address his pain, and on multiple occasions introduced new pain medications to address his symptoms, Haley cannot establish that Self acted with deliberate indifference to his medical needs. There is no evidence that Warden Bishop or Hoover had any role in, or ability to control, Haley's medical treatment. Accordingly, Defendants are entitled to summary judgment in their favor on the Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants Warden Bishop and Hoover will be granted. Defendant Krista Self's Motion to Dismiss or, in the Alternative Motion for Summary Judgment will also be granted. A separate Order shall issue.

Date: February 21, 2019

THEODORE D. CHUANG
United States District Judge